TUTTLE, Senior Circuit Judge:
 

 The defendant-appellant, John H. Reed, was convicted by a jury in the United States District Court for the Southern District of Alabama of six counts of embezzlement and unlawful possession and obstruction of the” U.S. mail. On this appeal, the defendant raises three issues: (1) the affi-ant’s testimony was insufficient to support a finding of probable cause for the issuance of a warrant to search the defendant’s automobile; (2) the trial court erred in allowing the introduction of evidence regarding the defendant’s bankruptcy; and (3) the trial court erred in allowing the introduction of evidence of the defendant’s possession and use of marijuana. Because we find that the trial court erred in allowing the introduction of evidence regarding the defendant’s use of marijuana and that the appellant may have been prejudiced thereby, we reverse.
 

 I. THE FACTS
 

 The defendant was employed as a letter carrier at the U.S. Post Office in Prichard, Alabama. In November 1981, Post Office authorities came to suspect that the defendant was mishandling mail and fraudulently converting negotiable instruments thus obtained. Michael D. Philbrick, a U.S. Postal Inspector, authorized a “testing program” during November and December, 1981, to determine the accuracy of these suspicions.
 

 From November 12 to November 19, 1981, three misaddressed envelopes containing U.S. government checks (known as “checkletters”) were deliberately placed in the box from which the defendant picked up his daily mail deliveries. Each of these checkletters was addressed to a location not on the defendant’s route and was accompanied by a postcard (known as a “pilot”) addressed to the same location. In accord with U.S. Postal Service regulations, the defendant always returned the misaddressed pilots to the Post Office at the end of the day; on no occasion were the identically-addressed checkletters returned. All three government checks had been negotiated by the time of their recovery.
 

 On December 2, 1981, Agent Philbrick placed a checkletter in the defendant’s box marked “deceased 11/9/81;” an inscription on the envelope ordered that it be returned to the U.S. Treasury. Philbrick and others maintained surveillance of the box until the appellant collected the mail therefrom; several pilot letters also placed in the box were returned at the end of the workday, but the checkletter was not. The next day this process was repeated with identical results.
 

 Upon the completion of his duties on December 3, the defendant was approached at the Prichard Post Office by Postal Agents Philbrick and Kuhn. The defendant was informed that the agents sought the whereabouts of 17 missing checkletters, and he consented to accompany the agents to Postal Headquarters in Mobile, Alabama.
 

 
 *640
 
 The defendant and Philbrick drove to Mobile in the defendant’s car while Kuhn followed in a postal vehicle. As the defendant entered the vehicle for the trip to Mobile, he took off his uniform jacket and placed it on the front seat of the car. Upon arriving in Mobile, the defendant locked his car and left the jacket inside.
 

 The defendant was arrested shortly thereafter. In a search incident to the defendant’s arrest, Agent Francis Uteg of the U.S. Secret Service discovered a hand-rolled cigarette in the defendant’s shirt pocket. At that time, the defendant purportedly requested the return of the cigarette and stated, “I do a little grass, but I don’t do any hard stuff.”
 

 The defendant refused to consent to a search of his automobile, so Philbrick applied for and received a search warrant on the morning of December 4. The subsequent search discovered five checkletters in the inside pocket of the defendant’s jacket; two of the checkletters were those placed in the defendant’s box as part of the testing program, and none of the letters was addressed to locations on the defendant’s route. The seal on one of the checkletters had been broken.
 

 II. THE SEARCH WARRANT
 

 The defendant attacks the search warrant authorizing the search of his automobile on two grounds: first, the affidavit of Agent Philbrick was insufficient to support the finding of probable cause since it consisted solely of eonclusory statements and failed to specify adequately the source of the affiant’s information, and second, the affiant did not provide sufficient information from which the magistrate could reasonably conclude that the specified items were located in the defendant’s automobile.
 
 [1]
 

 On 12/3/81, Mr. Reed had possession of the above described items by virtue of his employment as a Postal Letter Carrier. He failed to account for the above described items of U.S. Mail. At approximately 3:45 PM on 12/3/81, Mr. Reed finished his tour of duty and left the U.S. Post Office Building at Prichard, AL. He was carrying his uniform jacket. He placed the jacket in the above described automobile on the front seat and entered the automobile. Accompanied by Inspector Philbrick, Mr. Reed drove the automobile to the downtown Post Office at Mobile and parked and locked it in the customer parking lot. He left his jacket on the front seat of the automobile and accompanied the Postal Inspectors to their office. A thorough search of the Prichard Post Office, the grounds and his Postal vehicle, including all areas that Mr. Reed could have normally placed the mail and areas that he was observed placing mail, failed to produce the above described mail. Mr. Reed was thoroughly searched incident to his arrest. The missing mail was not discovered on his person. The above described pieces of mail were each accompanied by a corresponding post card. The letters addressed to Buford Stamps and Daisy Bush were accompanied by post cards similarly addressed. The letters addressed to Lula Buford were accompanied by a post card addressed as outgoing mail, as were the Lula Buford checks. Mr. Reed properly accounted for the post cards, but failed to properly account for the checks which are negotiable instruments. The checks and post cards were addressed in such a manner that they were undeliverable on Mr. Reed’s route and should have been turned in at the post office. Mr. Reed was questioned about the checks and denied any knowledge of them. Mr. Reed was observed handling the above described checks and post cards.
 

 We are only momentarily detained by the latter challenge. This Court has held, “It is only necessary that the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles sought were located at the place where it was proposed to search.”
 
 United States
 
 v.
 
 Maestas,
 
 546 F.2d 1177, 1180 (5th Cir.1977);
 
 see also United States v. Etley,
 
 574 F.2d 850, 852 (5th Cir.),
 
 cert. denied,
 
 439 U.S. 967, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978);
 
 United States v. Rahn,
 
 511 F.2d 290, 293 (10th Cir.),
 
 cert. denied,
 
 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). In the present case, the affiant Philbrick informed the magistrate that all other places where the missing mail might reasonably have been located (including the defendant’s person) had been searched prior to the application for the warrant to enter the defendant’s automobile. Furthermore, the affidavit specifically noted that the de
 
 *641
 
 fendant placed his uniform jacket on the seat of his car and locked it within upon arrival at Postal Headquarters. In these circumstances, a “man of reasonable caution” might certainly have concluded that the missing mail was located within the defendant’s automobile.
 

 The defendant next alleges that the affidavit executed by Philbrick before the magistrate failed to satisfy the reliability requirements established in
 
 Aguilar v. Texas,
 
 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and
 
 Spinelli
 
 v.
 
 United States,
 
 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
 
 [2]
 
 Specifically, the appellant urges that Agent Philbrick’s failure to specify the source of his information deprived the magistrate of grounds to scrutinize adequately the credibility of the source and the reliability of the information.
 

 Our analysis of the sufficiency of the affidavit begins with the Supreme Court’s admonition that
 

 the Fourth Amendment’s commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court’s cases are to be followed and the constitutional policies served, affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion .. . Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.
 

 United States v. Ventresca,
 
 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). With these words in mind, and in light of the cases discussed
 
 infra,
 
 we decline to hold that the affiant’s failure to specify whether the information provided to the magistrate was the product of his personal observations or those of others renders the warrant
 
 per se
 
 invalid. We must instead decide whether the affidavit, read as a whole, could reasonably have provided the magistrate a sufficient basis for a finding of probable cause based on credible information.
 

 There can be no question but that this affidavit would be insufficient if the information contained therein had been provided by an informant or any other non-government source. The affidavit, like that in
 
 Spinelli,
 
 contains neither an explicit indication that the source of the information was reliable or specific facts from which the magistrate could have drawn such a conclusion.
 

 In the present case, however, it is clear that the information contained in the affidavit was the result of an investigation of the appellant by government officials. Though the affidavit does not specifically state as much, a reasonable person would certainly be compelled to draw this conclusion given (1) the systematic account of the placement in the defendant’s pickup box of deliberately misaddressed checkletters accompanied by similarly misaddressed other pieces of mail, and (2) the discussion of the extensive search conducted in an effort to locate the missing checkletters. Therefore, this ease differs markedly from one where the source of the affiant’s information is an informant unknown to the magistrate and to whom the magistrate has no reason to ascribe qualities of honesty and reliability.
 

 Since the information contained in the affidavit was acquired in the course of an investigation of the appellant, it follows that the information outside of the personal knowledge of Agent Philbrick was provided either by Postal Inspectors or by other postal employees cooperating in the investiga
 
 *642
 
 tion of the defendant. It has long been held that statements by law enforcement officials based upon personal observation or upon the observation of fellow officials participating in the same investigation are entitled to a presumption of reliability.
 
 Ventresca,
 
 380 U.S. at 111, 85 S.Ct. at 747;
 
 United States v. Flynn,
 
 664 F.2d 1296, 1303 (5th Cir.),
 
 cert. denied,
 
 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982);
 
 United States v. Hayles,
 
 471 F.2d 788, 793 (5th Cir.1973),
 
 cert. denied,
 
 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 690 (1973);
 
 Brooks v. United States,
 
 416 F.2d 1044, 1049 (5th Cir.1969),
 
 cert. denied,
 
 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970). Furthermore, this Court has also attached this presumption of reliability to information based upon statements by “government officials who, while engaged in investigatory or regulatory responsibilities, discover evidence of possible criminal activity.”
 
 Flynn,
 
 664 F.2d at 1303. This presumption, like that in favor of law enforcement officials, is based upon the belief that facts gathered in the course of an investigation are unlikely to be based upon mere speculation or tainted by personal involvement with the suspect.
 
 Id.
 

 [3]
 

 In sum, a reasonable interpretation of the affidavit compels the conclusion that the information contained therein emanated from one of three sources: (1) the personal observations of the affiant, Agent Phil-brick, (2) statements to Agent Philbrick by other postal inspectors participating in the investigation, and (3) statements to Agent Philbrick by other postal employees acting in an investigatory capacity. Since the presumption of reliability attaches to information provided by such sources, it was not necessary that the affidavit provide additional facts from which the magistrate could make a particularized evaluation of the individual sources.
 

 III. THE BANKRUPTCY EVIDENCE
 

 The trial court allowed the prosecutor, over the defendant’s objection, to elicit testimony from the defendant regarding his personal bankruptcy. We find that this evidence was irrelevant and that the district court erred in allowing its admission;
 
 [4]
 
 however, we do not consider the question of whether the court’s action constituted prejudicial error since we reverse the conviction on the basis of the admission of evidence regarding the defendant’s possession and use of marijuana.
 

 The government urges that the bankruptcy evidence was admissible under Fed.R. Evid. 404(b) which allows the introduction of extrinsic acts in order to demonstrate the motive of the accused. But the mere fact that a defendant is in Chapter XIII bankruptcy in no way demonstrates that the defendant had a particular need for money at the time the crime was committed. In fact, an individual enters bankruptcy for the purpose of having his debts discharged and thereby relieving the pressure which might compel him or her to commit a criminal act. Since a trustee generally receives the bankrupt’s paycheck and administers a living allowance to the bankrupt, evidence of the defendant’s bankruptcy would only become relevant indirectly if it was shown that the defendant was incurring large debts or living beyond the means possible under the living allowance. In the present case, where there was no showing that the appellant was under any type of financial pressure, the mere showing that he had entered into bankruptcy two years previ
 
 *643
 
 ously was certainly irrelevant to a showing that he had a motivation to steal.
 
 [5]
 

 Numerous courts have recognized that evidence of an imminent financial burden on the defendant is admissible for the purpose of proving motive.
 
 United States v. Saniti,
 
 604 F.2d 603, 604 (9th Cir.),
 
 cert. denied,
 
 444 U.S. 969, 100 S.Ct. 461, 62 L.Ed.2d 384 (1979) (evidence of $250 per day heroin habit is admissible in bank robbery trial);
 
 United States v. Reed,
 
 639 F.2d 896, 907 (2d Cir.1981) (letter to defendant threatening foreclosure on home admissible in securities fraud trial);
 
 United States v. Polansky,
 
 418 F.2d 444, 448 (2d Cir.1969) (evidence of $100,000 in liabilities admissible to show motive to accept bribe). However, in all of these cases, the defendant was faced by potentially dire consequences (including personal bankruptcy) if he failed to meet certain financial obligations. This situation differs drastically from a showing that the defendant has in the past found himself unable to pay off his debts when no evidence is presented that the defendant continues to suffer from this inability.
 
 [6]
 

 In
 
 Davis v. United States,
 
 409 F.2d 453 (D.C.Cir.1969), the court reprimanded the trial judge for allowing the prosecution to introduce evidence regarding the defendant’s financial condition as proof of motivation for robbery. Though the court rejected the evidence on the basis that the probative value was outweighed by the prejudicial effect rather than on grounds of irrelevancy, its words are particularly applicable here.
 

 There was no showing here that these particular defendants had earnings that were inadequate for their needs or that they yearned for money. The inference [that their poverty motivated the robbery] rested solely on the general (and impermissible) assumption that those who are not well-off cannot live within a budget and that they crave money and will commit crimes to obtain it. (Footnote omitted).
 

 409 F.2d at 458. Likewise, it would be impermissible for a jury to assume that the mere status of the appellant as a bankrupt is relevant to showing that he had a motive to embezzle checkletters.
 

 IV. THE MARIJUANA EVIDENCE
 

 At the commencement of his presentation of evidence, the defendant called three witnesses who testified as to the defendant’s character. Each of these witnesses was asked the standard questions generally presented to character witnesses including, “Have you come to form an opinion as to [the defendant’s] general reputation in the community?” and “Have you come to form an opinion as to his reputation for truth and veracity?” The witnesses, of course, answered these questions in the defendant’s favor.
 

 Immediately thereafter, the defendant took the stand in his own defense. On cross-examination, the government asked the defendant over his attorney’s objection whether he recalled being in possession of a marijuana cigarette at the time of his arrest and whether he recalled stating to the agent who retrieved the cigarette, “I smoke a little grass, but I don’t do any hard stuff. I want my cigarette back.” The defendant
 
 *644
 
 responded negatively to both of these questions. In rebuttal, the government called Agent Uteg who testified that he had discovered a hand-rolled cigarette on the defendant at the time of the arrest and that the defendant had in fact made the above statement.
 

 On this appeal, the defendant contends that evidence of his use and possession of marijuana was not admissible under the Federal Rules of Evidence and that the introduction of such evidence was highly prejudicial. We concur and therefore reverse the defendant’s conviction.
 

 The government urges that its line of questioning was permissible under either of two sets of evidentiary rules: (1) Fed.R. Evid. 608 and 611(b) which permit questions directed at the credibility of a witness, and (2) Fed.R.Evid. 404 and 405 which, under certain circumstances, allow the introduction of evidence regarding a defendant’s character. However, a careful analysis of these rules indicates that they were not intended to allow the type of wide-ranging cross-examination conducted by the government in the present ease.
 

 The government’s contention that questions regarding the defendant’s possession of marijuana were permissible under Rules 608 and 611(b) as an attempt to impeach his credibility and character for truthfulness or untruthfulness connote a fundamental misunderstanding of these rules. Rule 608(b) states that “[sjpecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility,' other than conviction of a crime, may not be proved by extrinsic evidence. They may however ... be inquired into on cross-examination of the witness concerning his character for truthfulness or untruthfulness.” Suffice it to say, we are unable to perceive that a person’s possession of a small amount of marijuana sheds any light whatsoever on his “character for ... untruthfulness.” Though the commission of any crime may in fact cast doubt on the broad question of one’s “credibility,” the drafters of the Rules were careful to limit inquiry under Rule 608 to a witness’ propensity for honesty. While a prior instance of perjury might be relevant to this issue, the possession of a marijuana cigarette certainly is not.
 
 [7]
 

 The government’s attempt to bootstrap itself into compliance with Rule 608 by arguing that the defendant’s purportedly false answers to the questions regarding marijuana demonstrated his propensity for untruthfulness also must fail. Though the defendant’s answers may have indeed been false, the issue before us is the propriety of the prosecutor’s questions and the introduction of the defendant’s possession and use of marijuana as an issue in the trial; the prosecutor can hardly contend that his question was intended to highlight a prior inconsistent statement when no inconsistent statement had been uttered until after the prosecutor broached the marijuana issue.
 

 Finally, Rule 611 (as its title, “Mode and Order of Interrogation and Presentation” implies) does not, contrary to the government’s contention, provide an independent ground for the admission of evidence on a matter that has not previously been placed in issue by the defendant. Rule 611 regulates only the presentation of evidence otherwise admissible under Rule 608 or some other rule of evidence.
 
 [8]
 
 Therefore, the broad statement in Rule 611(b) that “Cross-examination shall be limited to ... matters affecting the credibility of the witness” is
 
 *645
 
 limited, in this instance, by the requirement of Rule 608 that such matters must pertain to a witness’ “character for truthfulness or untruthfulness.” As discussed
 
 supra,
 
 the disputed questions were certainly not directed at this facet of the defendant’s character.
 

 The government next contends that the defendant, by his use of character witnesses, injected his character as an issue in the case and thereby subjected himself to the questions regarding marijuana under Fed. R.Evid. 404(a)(1).
 
 [9]
 
 This conclusion, however, reads far too much into the carefully-worded provisions of the rules pertaining to character evidence.
 

 Rules 404 and 405 (and their common law predecessors) are designed to insure that the ultimate decision of the factfinder is based on the merits of the case and not on the personalities involved.
 
 [10]
 
 This is especially important in a criminal case where the state must be compelled to convict a defendant on the basis of a particular act and not because the defendant is generally a “bad” or “evil” person. Rule 404(a), therefore, generally excludes the introduction of character evidence, subject only to limited exceptions.
 

 Rule 404(a)(1) is one of these exceptions. A defendant in a criminal case is allowed to introduce “[ejvidence of a
 
 pertinent
 
 trait of his character” (emphasis added) and the prosecution is allowed to rebut the same. This is one of the few instances in which the prosecution is allowed to introduce evidence of a defendant’s character to prove that the defendant acted in conformity with that character on a particular occasion.
 

 The defendant in the present case introduced character witnesses in an attempt to persuade the jury that he was not the type of person to embezzle checks from the U.S. mail. Contrary to the apparent belief of the government, the testimony of these witnesses did not grant the prosecution an unrestrained license to attack any and all aspects of the defendant’s character. Rule 404(a)(1) requires that the government’s rebuttal evidence focus on the “pertinent traits” placed in issue by the defendant,
 
 i.e.,
 
 does he, in fact, have a good reputation in his community? Does he, in fact, have a reputation in his community for honesty? And, is he the type of person who would embezzle checks from the U.S. mail? It is clear that one’s possession and use of small amounts of marijuana has absolutely no bearing on one’s propensity to engage in theft.
 
 [11]
 

 Likewise, Rule 404(b) provides no support for the government. That rule states in part, “Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.” Moreover, it is well-established in this Circuit that
 

 [t]he only type of evidence admissible to show defendant’s character is proof of his reputation in the community (citations omitted). Specific acts of misconduct cannot be shown (citations omitted). If the defendant offers evidence of his reputation for good character, the government may rebut by evidence that his reputation is bad (citations omitted). This evidence however is limited to testimony concerning reputation only. Proof of specific acts of misconduct is still not admissible (citations omitted).
 

 
 *646
 

 U.S.
 
 v.
 
 Davenport,
 
 449 F.2d 696, 699 (5th Cir.1971).
 
 See also, U.S. v. Franklin,
 
 471 F.2d 1299, 1303 (5th Cir.1973).
 

 In short, to allow questioning of the type engaged in here would defeat the purposes of Rules 404 and 405. This Court is unable to conclude that evidence of the defendant’s use of marijuana has “any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.” Fed.R.Evid. 401. Since the evidence thus fails to meet thfe test for relevancy under the Federal Rules of Evidence, it is
 
 per se
 
 inadmissible under Rule 402.
 

 Moreover, as the preceding analysis demonstrates, this evidence would be inadmissible even if this Court found it relevant to some element of the case against the defendant. The limitations of Rules 404 and 608 on the introduction of relevant evidence clearly apply to the evidence regarding the defendant’s possession and use of marijuana.
 

 Finally, though this Court is loath to interfere with the wide discretion granted the trial court under Fed.R.Evid. 403 in balancing the probative value of particular evidence against its prejudicial effect, we might be compelled to reverse the district court on this issue if it were necessary to reach it. We note especially the case of
 
 United States v. Blackshire,
 
 538 F.2d 569, 572 (4th Cir.),
 
 cert. denied,
 
 429 U.S. 840, 97 S.Ct. 113, 50 L.Ed.2d 108 (1976), where the Fourth Circuit, finding the evidence highly prejudicial, reprimanded the district court for allowing evidence that a defendant indicted for heroin distribution possessed LSD tablets at the time of his arrest.
 
 [12]
 

 Having held that the district court erred in allowing the admission of evidence of the defendant’s possession and use of marijuana, we turn now to the question of whether the introduction of the evidence had a prejudicial effect on the defendant’s right to a fair trial. “[This] decision requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant’s guilt.”
 
 United States v. Meneses-Davila,
 
 580 F.2d 888, 890 (5th Cir.1978). Or, as the Supreme Court more succinctly put it in
 
 Fahy v. Connecticut,
 
 375 U.S. 85, 86-87, 84 S.Ct. 229, 230-31, 11 L.Ed.2d 171 (1963), “The question [of whether an error requires reversal] is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.”
 

 In the present case, we are unable to conclude that the irrelevant references to marijuana did not unduly affect the impartiality of the jury. The principal defense presented by the defendant was that he was an honest, hardworking individual who would not be likely to participate in the crimes for which he was charged. This entire defense was severely undermined by the government’s impermissible insertion of the marijuana testimony which cast aspersions on the defendant’s general character before the jury while in no way reflecting on his honesty, veracity, or any other pertinent trait of character. Furthermore, the government’s subsequent impeachment of the defendant based upon his answer to the disputed questions undoubtedly tainted the defendant’s credibility in the eyes of the jury. While even the mere articulation of the- questions by the prosecutor may have substantially prejudiced the defendant, the failure of the trial court to strike the questions and direct the jury to disregard them granted legitimacy to the inquiry and contributed to the potentially deleterious impact on the defendant.
 

 Though there is substantial evidence of the defendant’s guilt, we are unable to con-
 
 *647
 
 elude that the evidence complained of did not contribute to the conviction of the defendant. Therefore, we are compelled to reverse.
 
 [13]
 

 The judgment is REVERSED.
 

 [1]
 

 . The statement of facts supporting the issuance of the search warrant read:
 

 [2]
 

 . This Court has interpreted
 
 Aguilar
 
 and
 
 Spi-nelli
 
 as imposing a two-pronged test on a magistrate considering whether to issue a search warrant.
 

 First, the magistrate must be presented with the facts from which the informant concluded that some criminal activity was taking, or had taken, place. He must then assess these underlying facts to determine whether or not the inference of criminal activity is warranted. Second, the magistrate must be presented with facts which establish the probable credibility of the informant or the reliability of his information.
 

 United States v. Martin,
 
 615 F.2d 318, 323-24 (5th Cir.1980). The appellant before us urges that the affidavit failed to provide information adequate to meet the second prong of this test.
 

 [3]
 

 . This factor distinguishes the situation before us from that addressed by the Court in
 
 United States
 
 v.
 
 Holmes,
 
 521 F.2d 859 (5th Cir. 1975),
 
 reh. en banc, granted,
 
 525 F.2d 1364,
 
 affd in part, rev’d in part,
 
 537 F.2d 227 (1976). In that case, the Court was unable to conclude from a commonsense reading of the affidavit that the information contained therein had been provided solely by government employees participating in the investigation.
 

 [4]
 

 . Federal Rule of Evidence 401 defines “relevant evidence” as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Evidence not
 
 *643
 
 meeting this criterion is inadmissible under Federal Rule of Evidence 402. 28 U.S.C.A.
 

 [5]
 

 . In considering whether to allow the bankruptcy evidence, the trial court even stated "[There] must be a correlation between the extrinsic act and the offense. The only correlation I can see would be that [the defendant] was unfunded and he wanted to be funded.” (R. 218). The trial court then apparently concluded that the mere status of bankruptcy meant that the defendant was “unfunded;” this assumption is clearly incorrect absent some additional showing of financial difficulties at the time of the crime.
 

 [6]
 

 . In
 
 United States v. Pommerening,
 
 500 F.2d 92, 100-01 (10th Cir.1974), the Tenth Circuit affirmed the district court’s admission of evidence of the defendant’s prior bankruptcies in order to prove motive. However, in that case the defendant was charged with bribing a government official in order to obtain a loan from the Small Business Administration. The bankruptcy evidence was introduced to show that the defendant would have been unable to obtain the loan by legal means and thus was compelled to resort to bribery. The evidence was not introduced to establish that the defendant had a pressing need for money.
 

 [7]
 

 .
 
 See Truman v. Wainwright,
 
 514 F.2d 150, 152 (5th Cir.1975) (“It is firmly established in this Circuit that a witness may not be impeached by inquiry into specific acts of misconduct not resulting in a conviction.”);
 
 United States v. Alvarado,
 
 519 F.2d 1133, 1135 (5th Cir.), cert.
 
 denied,
 
 424 U.S. 911, 96 S.Ct. 1107, 47 L.Ed.2d 315 (1975) (not permissible to question witness in marijuana case regarding his homosexuality);
 
 Cloud v. Thomas,
 
 627 F.2d 742, 744 (5th Cir.1980), ce
 
 rt. denied,
 
 450 U.S. 1041, 101 S.Ct. 1760, 68 L.Ed.2d 239 (1981). Of course, if the defendant had been
 
 convicted
 
 of marijuana possession, this might be admissible under Federal Rule of Evidence 609.
 

 [8]
 

 . The House Committee Report on Rule 611(b) noted that it “facilitates orderly presentation by each party at trial.” Report of Committee on the Judiciary, House of Representatives, 93rd Cong., 1st Sess., No. 93-650, Nov. 15, 1973, p. 12.
 

 [9]
 

 . Rule 404(a)(1) provides: “Evidence of a person’s character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except ... evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.”
 

 [10]
 

 .
 
 Michelson v. United States,
 
 355 U.S. 469, 475-6, 69 S.Ct. 213, 218-19, 93 L.Ed. 168 (1948); Fed.R.Evid. 404, Advisory Committee Note; Weinstein’s Evidence ¶ 404[05] at 404-36 to 404 — 41.
 

 [11]
 

 .We note that Rule 405 may allow a prosecutor to ask character witnesses whether they have heard of certain specific acts committed by the defendant.
 
 United States v. Franklin,
 
 471 F.2d 1299, 1302 (5th Cir.1973). Such inquiry is permissible since the prosecutor is not seeking to prove that the defendant acted in conformity with these acts, but to attack the credibility of the witnesses. This is obviously not the situation in the present case since the prosecution did not even raise the marijuana issue until the defendant was on the stand.
 

 [12]
 

 . In so concluding, we find that the disputed evidence meets neither prong of the test for the admission of extrinsic act evidence enunciated in
 
 United States v. Beechum,
 
 582 F.2d 898 (5th Cir.1978) (en banc),
 
 cert. denied,
 
 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979): “First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant’s character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403.”
 
 Id.
 
 at 911.
 

 [13]
 

 . Since the determination of the prejudicial degree of an evidentiary error is necessarily determined on the unique facts of each case, a reference to prior case law is only marginally relevant. However, in the following cases, this Court has overturned criminal convictions on the ground that the introduction of prior crimes or bad acts by the defendant substantially prejudiced the defendant’s right to a fair trial.
 
 United States v. Cox,
 
 536 F.2d 65, 71 (5th Cir.1976);
 
 United States v. Brown,
 
 451 F.2d 1231, 1234 (5th Cir.1971);
 
 United States v. Vosper,
 
 493 F.2d 433, 438-9 (5th Cir.1974);
 
 United States v. Ratner,
 
 464 F.2d 169, 172 (5th Cir.1972);
 
 Odom v. United States,
 
 377 F.2d 853, 860 (5th Cir.1967);
 
 Hurst v. United States,
 
 337 F.2d 678, 681 (5th Cir.1964). Some circuits have utilized a
 
 per se
 
 rule that the improper admission of prior crimes automatically requires reversal,
 
 e.g., United States v. Parker,
 
 604 F.2d 1327, 1329 (10th Cir.1979) (“Improper admission of evidence of a prior crime or conviction, even in the face of other evidence amply supporting the verdict, constitutes plain error impinging upon the fundamental fairness of the trial itself.”).
 
 See also Osborne v. United States,
 
 351 F.2d 111, 117 (8th Cir.1965);
 
 Sang Soon Sur
 
 v.
 
 United States,
 
 167 F.2d 431, 433 (9th Cir.1948). While we stop short of adopting such a
 
 per se
 
 rule, its use by these circuits emphasizes the gravity of an impropriety such as that before us.