Margaret Bishop was convicted of the illegal possession of cocaine, sentenced to ten years' imprisonment and placed on probation. On this appeal from that conviction, she contends that the search of her residence was illegal because the affidavit for the search warrant did not satisfy the requirement of probable cause.
The search warrant was obtained by Mobile County Deputy Sheriff James Long on the afternoon of March 11, 1986, from a district court judge in Mobile. The search warrant was issued solely upon the information contained in the affidavit. That affidavit states:
 "A reliable confidential informant revealed to me that there were drug transactions being made at the above residence on Eagle Drive. Informant stated that a white male subject driving a car with Florida plates was delivering drugs to the residence for disbursement. The car is a 1978 Dodge 2 dr. automobile with Tag # 216EUA.
 "Surveillance was begun on the residence at 1462 Eagle Drive and during the course of said surveillance the Dodge with Florida plates was observed. Tag # 216EUA is registered to a Charles Edward Sapp. This subject was checked through the DEA criminal records and it was revealed that he is a known associate of drug dealers and that he has been at the scene of various drug transactions.
 "Further surveillance of the residence revealed that the subject Gerald Neece was seen entering the above residence on 11 March 1986 at 1630 hours (4:30 p.m.). Neece is a known drug offender and has been arrested for Trafficking in Marijuana by the Mobile County Sheriff's Department Narcotics Division. When Neece exited the residence he was subsequently stopped and cocaine was found in his possession of which cocaine was purchased with marked currency supplied by the Mobile County Sheriff's Department.
 "Based on the information of the informant and on the subsequent surveillance of the residence I hereby request that a search warrant be issued for 1462 Eagle Drive."
This affidavit is sufficient under the totality of the circumstances standard for determining the existence of probable cause adopted in Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):
 "[W]e conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in Aguilar [v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)], and Spinelli [v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
(1969)]. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. See Jones v. United States
[362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)], supra; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, *Page 831 
there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. Jones v. United States, 362 U.S., at 271, 80 S.Ct., at 736." Gates, 462 U.S. at 238, 103 S.Ct. at 2332.
Although the two-pronged test of Aguilar-Spinelli has been abandoned, it has not been forgotten. "[A]n informant's 'veracity', 'reliability', and 'basis of knowledge' are all highly relevant in determining the value of his report" and are "relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates, 462 U.S. at 230, 233,103 S.Ct. at 2328-29.
When considered alone, the informant's tip, contained only in paragraph one of the affidavit, does not furnish the probable cause necessary to obtain a search warrant. We do not know how or when the informant obtained his knowledge. We do not know that the informant is credible or his information reliable. The facts detailed in the informant's tip are merely innocent, innocuous facts: a general description of an alleged drug supplier and his car. W. LaFave, 1 Search and Seizure, § 3.3, n. 203, p. 216, 1986 Pocket Part (1978), and cases cited therein.
However, in this case, the informant's tip was corroborated by independent police investigation. LaFave at § 3.3(f). The decisions of the United States Supreme Court "applying the totality-of-the-circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work." Gates,462 U.S. at 241, 103 S.Ct. at 2334.
"[S]eemingly innocent activity can become suspicious in light of a prior tip." 1 LaFave at 218, 1986 Pocket Part.
 "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio
impose a drastically more rigorous definition of probable cause than the security of our citizens' demands." Gates, 462 U.S. at 244, n. 13, 103 S.Ct. at 2335.
"It is enough, for purposes of assessing probable-cause, that '[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' "Gates, 462 U.S. at 244-45, 103 S.Ct. at 2335.
 "[P]robable cause is a flexible, commonsense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 289, 69 L.Ed. 543] (1925), that certain items may be contraband . . .; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176 [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1949)." Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).
See also McElroy v. State, 469 So.2d 1337, 1340-41 (Ala.Cr.App. 1985).
Although the affidavit does not specifically state that the surveillance and other investigation (check of D.E.A. criminal records and the controlled cocaine buy) were conducted by or under the supervision of the Mobile County Sheriff's Office or any other law enforcement agency, a common sense reading of the affidavit warrants that conclusion. Here, as in United Statesv. Reed, 700 F.2d 638, 641 (11th Cir. 1983),
 "[t]he affidavit, like that in Spinelli, contains neither an explicit indication that the source of the information was reliable or specific facts from which the magistrate could have drawn such a conclusion. *Page 832 
 "In the present case, however, it is clear that the information contained in the affidavit was the result of an investigation of the appellant by government officials. Though the affidavit does not specifically state as much, a reasonable person would certainly be compelled to draw this conclusion. . . ."
Since the information corroborating the informant's tip was acquired in the course of the investigation of the defendant, it follows that the information of which Deputy Long did not have personal knowledge was provided either by the Sheriff's Office or by other law enforcement agencies, such as the D.E.A., cooperating in the investigation. Reed, 700 F.2d at 641-42.
 "It has long been held that statements by law enforcement officials based upon personal observation or upon the observation of fellow officials participating in the same investigation are entitled to a presumption of reliability. Ventresca, 380 U.S. at 111, 85 S.Ct. at 747; United States v. Flynn, 664 F.2d 1296, 1303 (5th Cir.), cert. denied, 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982); United States v. Hayles, 471 F.2d 788, 793 (5th Cir. 1973), cert. denied, 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 690 (1973); Brooks v. United States, 416 F.2d 1044, 1049 (5th Cir. 1969), cert. denied, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970). Furthermore, this Court has also attached this presumption of reliability to information based upon statements by 'government officials who, while engaged in investigatory or regulatory responsibilities, discover evidence of possible criminal activity.' Flynn, 664 F.2d at 1303. This presumption, like that in favor of law enforcement officials, is based upon the belief that facts gathered in the course of an investigation are unlikely to be based upon mere speculation or tainted by personal involvement with the suspect. Id." Reed, 700 F.2d at 642.
See also Moore v. State, 441 So.2d 1003, 1006 (Ala.Cr.App. 1983), cert. denied, 466 U.S. 928, 104 S.Ct. 1711,80 L.Ed.2d 183 (1984).
Although the affidavit does not state that drugs had ever been observed inside the defendant's residence, a reading of the affidavit supports that inference. The informant stated that drugs were being delivered to the residence, in a specifically described car, that car was observed at the residence and was registered to a "known associate of drug dealers," another "known drug offender" was observed entering and exiting the residence, cocaine was found in that offender's possession after he left the residence, and the cocaine was purchased with "marked currency supplied by the Mobile County Sheriff's Department." This information was sufficient to support the conclusion that the cocaine was purchased inside the defendant's residence.
It is true that there was no proof that Neece did not have the cocaine concealed upon his person before he entered the defendant's residence and that there is no statement in the affidavit as to when or where Neece purchased the cocaine. Although "a reviewing court must take great care to insure that warrants are issued only upon a showing of probable cause," the affidavit "must be read in a common sense fashion, . . . and great deference given to the magistrate's finding which should be upheld in marginal or doubtful cases." United States v.Lockett, 674 F.2d 843, 845-46 (11th Cir. 1982).
 "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' Spinelli, supra, 393 U.S., at 419, 89 S.Ct., at 590. 'A grudging or negative attitude by reviewing courts toward warrants,' Ventresca, 380 U.S., at 108, 85 S.Ct., at 745, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' " Gates, 462 U.S. at 236, 103 S.Ct. at 2331.
The affidavit in this case is not a model of clarity. It states conclusions and omits many specific details. Conclusory statements *Page 833 
are not sufficient to allow the magistrate to weigh the evidence in a nontechnical, commonsense, and realistic manner in order to make an independent judgment about the existence of probable cause. Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332;United States v. Parker, 722 F.2d 179, 182 (5th Cir. 1983). While the affidavit is subject to criticism, it is not so deficient as to be insufficient to establish probable cause. The defendant's motion to suppress was properly denied. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.