[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 1, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14848
Non-Argument Calendar

_____

D. C. Docket No. 05-00060-CR-WDO-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY TIMOTHY BURRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(August 1, 2007)

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Jimmy Timothy Burris appeals his conviction for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). We affirm.

## I. BACKGROUND

In November 2004, a federal grand jury indicted Burris for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).[1] Burris subsequently moved to suppress any evidence discovered during the search of his house and argued that the search-warrant affidavit failed to contain any "evidence of honesty, trustworthiness, or reliability" as to the four confidential informants who supplied information necessary to establish probable cause for the issuance of the search warrant. R1-49 at ¶ 6. Burris alleged that the four confidential informants implicated him in the sale of methamphetamine from his residence.

Burris also filed a motion for disclosure of the confidential informants and contended that his need for that information outweighed the government's interest in withholding the informants' identities and whereabouts. The government responded that both motions should be denied. The district judge held an evidentiary hearing on the motions and denied them both. Burris then filed several

---

[1] Codefendant Cher Ward was indicted for the same crime. This count was later dismissed, however, after Ward pled guilty to state charges.

motions in limine, including, motions to exclude the testimony (1) of "any agent" that "others have told the agent that they witnessed the defendant selling methamphetamine," on the ground that such testimony would constitute hearsay, R1-75 at ¶ 1, and (2) the government witnesses should be cautioned not to testify that officers recovered five guns during the search of Burris's house, because such evidence was irrelevant under Federal Rule of Evidence 401 on the issue of whether he possessed with intent to distribute methamphetamine, R1-78 at p. 2.

Concerning the first motion in limine, the district judge determined that the government could establish that police officers searched Burris's house pursuant to a search warrant, but the government could not elicit any testimony that the officers received information from a third source that Burris was dealing methamphetamine from his house. With respect to the second motion, the district judge denied the motion and concluded that the government could elicit testimony that officers discovered guns while conducting the search of Burris's residence.

During his opening statement at trial, defense counsel admitted that Burris was "guilty of possessing . . . methamphetamine, and that is against the law," however, he denied that Burris intended to distribute the drug. R5 at 48. The government called Hubert Jordan, an agent with the Drug Enforcement Administration ("DEA"), who testified that he discovered methamphetamine at

3

Burris's residence during the execution of the search warrant. Peter Echevarria, a DEA forensic chemist, testified that the gross weight of the drugs recovered from the search of Burris's residence totaled 206.06 grams. Brandon Sellers, another government witness, testified that, during the search of Burris's house, he discovered $1,558, primarily in one dollar bills, wrapped inside aluminum foil in a freezer, as well as two firearms. Defense counsel asserted a standing objection to the relevancy of the guns, but the district judge overruled the objection.

Thereafter, a juror submitted a question to the judge and asked why officials searched Burris's house. During a side-bar conference, the government argued that it was "essential" that its witnesses be permitted to explain that they had obtained a search warrant "because of information [from confidential informants] that [Burris] was dealing drugs out of the house." Id. at 82. In contrast, defense counsel maintained that such testimony would violate the Confrontation Clause of the Sixth Amendment to the Constitution. The judge, however, ruled that the government could elicit testimony regarding the reason that the officers searched Burris's residence.

The government next presented the testimony of Anna Lumpkin, a local law-enforcement officer, who testified that she discovered a scanner, which was programmed to the frequency used by the Baldwin County Sheriff's Department,

4

in Burris's kitchen during the execution of the search warrant. Over another defense objection, Lumpkin testified that criminals often use scanners to listen to communications within the Sheriff's Department regarding ongoing investigations or arrests. Lumpkin also testified that the officers recovered digital scales that were located in the same box with the methamphetamine, a razor blade, and a glass tube that probably was used "as a smoking device." Id. at 98. Lumpkin further noted that the search of Burris's master bedroom revealed a book, entitled Secrets of Methamphetamine Manufacture, Including Recipes for MDMA, Ecstasy, and Other Psychedelic Amphetamines, as well as firearms. Id. at 100-101, 103. Defense counsel again objected to the testimony with respect to the discovery of firearms at Burris's house.

Lt. Joseph King, another government witness, testified that, in his experience as an officer in the Baldwin County Sheriff's Department, "it's hard to find a user that ever has much more than a gram" of methamphetamine because he or she is "going to take it" if it is available. Id. at 112. In describing the differences between a "dealer" and a "user," Lt. King testified that the majority of dealers in Baldwin County carried over a half-ounce of methamphetamine, and those that carried even more than that were "prominent ice dealer[s]." Id. at 114. Lt. King also explained that a dealer ordinarily possessed digital scales and had a

large amount of currency at home.  Moreover, Lt. King testified that the seven ounces of methamphetamine recovered from Burris's residence would sell for more than $20,000 in Baldwin County, and between $7,000 and $9,000 in Atlanta.[2] Id. at 118.  Importantly, Lt. King also explained to the jury how he sought and received the search warrant for Burris's residence:

> Q. And how did you become involved in that case?
>
> A. I gathered enough evidence to seek a search warrant from a magistrate judge in Baldwin County.
>
> Q. All right.  And what evidence did you come into?
>
> A. I received information regarding narcotics activity and presented it to the judge and was granted a search warrant for [Burris's] residence and the adjacent shop to his house.

Id. at 120 (emphasis added).

Defense counsel then moved for a mistrial on the basis that Lt. King's testimony violated Federal Rule of Evidence 801, as well as the Confrontation Clause, because "[w]e've just been given hearsay evidence from unknown, unnamed people to which we don't have the right to confront and cross."  Id. at 121.  The district judge denied the motion and did not give a limiting instruction with respect to Lt. King's testimony.  The government's final witness, Cher Ward,

---

[2] The DEA forensic chemist testified that the 206.6 grams of methamphetamine yielded 140.4 grams of pure methamphetamine.  R5 at 58.

testified that she was Burris's girlfriend and that he provided her with methamphetamine daily. Ward did not see Burris selling to anyone, although she occasionally noticed some of Burris's friends, who also were methamphetamine users, visiting Burris in his mechanic's workshop, which was located "[a]bout 150 yards from the house." Id. at 178.

Ward further testified that she had been charged in state court with trafficking in methamphetamine, but, as a result of a plea bargain, she eventually pled guilty to a lesser charge of possession of methamphetamine in exchange for agreeing to testify truthfully for the government at Burris's trial in federal court. Consequently, Ward testified that she was placed on probation for five years and was fined $1,000. Additionally, Ward testified that the government charged her with the offense of misprision, but this charge subsequently was dismissed because she pled guilty in the state court proceeding. The government introduced into evidence Ward's indictment, plea agreement, and sentence.

On cross-examination, Ward conceded that she could have been charged in federal court with possession with intent to distribute methamphetamine. When defense counsel began to cross-examine Ward over the possible sentence she could have received if she had been convicted of that crime, the district judge stopped the questioning because it was irrelevant. Defense counsel tried to explain that he was

7

"exploring the deal she got," but the district judge told counsel to "move onto something else," because that line of questioning was "not relevant to [his] client." Id. at 190-92. After Ward's testimony, the government rested.

Defense counsel moved for an advance ruling on whether the government would be allowed to rebut Burris's good character witnesses with hearsay that other people told law enforcement that Burris sold methamphetamine. Defense counsel explained that this decision would affect his decision on whether to call character witnesses. The district judge did not rule in advance, and Burris did not present any testimony on his behalf.

During his closing argument, defense counsel admitted that Burris possessed methamphetamine but denied that he distributed the drug. The jury subsequently found Burris guilty of possession with intent to distribute methamphetamine. This appeal followed. On appeal, Burris presents three arguments that we will address: whether the district judge erred in  (1)  permitting a government witness to testify that he obtained a search warrant based on an out-of-court statement "regarding narcotics activity" at Burris's house; (2) admitting evidence at trial that firearms were discovered during the search of Burris's house; and (3) limiting defense counsel's cross-examination of a government witness at trial.[3]

---

[3] Burris also presents a fourth argument, that the district judge abused his discretion in refusing to provide an advance ruling on the nature and scope of the government's rebuttal

## II. DISCUSSION

A. <u>Search Warrant Based on Out-of-Court Statement</u>

Burris argues that Lt. King's testimony that he obtained a search warrant based on information from "unnamed, unidentified, confidential informants and a concerned citizen that there had been repeated drug activity at or near Burris's home" constituted hearsay, and that the prejudicial effect of this hearsay substantially outweighed its probative value. Appellant's Br. at 10. Burris also asserts that the government cited certain decisions during his trial for the "erroneous proposition of law" that hearsay may be admitted if the circumstances of a search warrant were "inextricably intertwined" with a drug case itself. <u>Id.</u> at 13. Accordingly, Burris contends that he "was denied his right to a fair trial and his conviction must be reversed." <u>Id.</u> at 15.

As a preliminary matter, it appears that Burris, on appeal, is challenging Lt. King's testimony that he applied for a search warrant based on "information regarding narcotics activity" exclusively on hearsay grounds and not on both hearsay and Confrontation Clause grounds as he did in the district court. <u>Id.</u> at 11; R5-120; <u>see</u> <u>Favre v. Henderson</u>, 464 F.2d 359, 363 (5th Cir. 1972) (noting that

---

evidence, if certain defense witnesses were called to testify at trial. Because Burris did not make an offer of proof on the witnesses' expected testimony, we cannot consider this claim, since review of the district judge's decision for error is "impossible." <u>United States v. Taylor</u>, 417 F.3d 1176, 1180 (11th Cir. 2005) (per curiam).

9

hearsay rules and the Confrontation Clause, while "generally designed to protect similar values," are not congruent and "merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied"). Burris frames his argument on appeal in terms of an evidentiary violation and not a constitutional violation. Additionally, the evidentiary standard of review is abuse of discretion, whereas a Confrontation Clause challenge is reviewed de novo. United States v. Yates, 438 F.3d 1307, 1311-12 (11th Cir. 2006) (en banc). Moreover, while there are passing references in the appellate brief to the fact that defense counsel raised a Confrontation Clause issue in the district court, see generally Appellant's Br. at 10-15, the brief presents no formal Sixth Amendment or constitutional argument with respect to Lt. King's testimony. Consequently, we must determine whether Burris has waived any Confrontation Clause challenge on appeal. See United States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006) (recognizing that a party waives any substantive argument that is not included on appeal and that a passing reference to the order from which the appealed is taken is insufficient to raise the issue).

"We generally review a district court's admission of evidence for an abuse of discretion." United States v. Arbolaez, 450 F.3d 1283, 1289 (11th Cir. 2006) (per curiam). The Federal Rules of Evidence define hearsay as "a statement, other

10

than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). "We have ruled that testimony as to the details of statements received by a government agent and later used as the basis for an affidavit in support of a search warrant, even when purportedly admitted 'not . . . for the truthfulness of [what the informant said but] to show why [the agent] did what he did' after he received that information, constitutes inadmissible hearsay." Arbolaez, 450 F.3d at 1290 (citation omitted) (omission and alteration in original).

Even if hearsay is improperly admitted, however, reversal of a conviction is not necessarily mandated: "[t]o require a new trial . . . [a] significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the . . . statement had a substantial impact upon the verdict of the jury." Id. (citation omitted) (omissions and alterations in original). We have recognized: "'[E]videntiary and other nonconstitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted.'" Id. (citation omitted) (alteration in original). In Arbolaez, we concluded that the challenged statement constituted inadmissible hearsay, but

11

nonetheless determined that the error was harmless and, therefore, did not require reversal. Id. at 1291.

A statement by a law-enforcement officer during trial that he obtained a search warrant for Burris's residence based on information that he received "regarding narcotics activity" there constitutes hearsay. See Arbolaez, 450 F.3d at 1290. Because none of the hearsay exceptions applies in this case, it appears that the admission of the challenged statement into evidence was improper. Nevertheless, we conclude that the error, if any, was harmless, because other evidence independently supported the jury's verdict. This included seizure of seven ounces, or 206.06 grams, of methamphetamine, digital scales that were located in the same box with the methamphetamine, a razor blade, a glass tube that could have been used as a smoking device, a book entitled Secrets of Methamphetamine Manufacture, Including Recipes for MDMA, Ecstasy, and Other Psychedelic Amphetamines, five guns, a scanner that was set to the same frequency used by the Sheriff's Department, as well as $1,558 wrapped inside aluminum foil in a freezer. Additionally, the government presented testimony from police officers who explained the differences between a "user" and a "dealer." A user ordinarily does not possess more than a gram of methamphetamine at any time, and seven ounces, 206.06 grams, of

12

methamphetamine were worth approximately $20,000 in Baldwin County, Georgia. In contrast, a dealer ordinarily possesses digital scales and has a large amount of currency at home. Additionally, the testimony of Burris's girlfriend was that he provided her with methamphetamine on a daily basis and that his friends, some of whom also were methamphetamine users, occasionally visited him in his mechanic's workshop.

Moreover, Burris's own attorney admitted during opening and closing arguments that Burris was "guilty of possessing . . . methamphetamine, and that is against the law." R5 at 48. A juror reasonably could have interpreted "narcotics activity" as referring to the act of possession and personal use of an illegal drug and not to the distribution of methamphetamine. Consequently, the challenged statement did not necessarily have any more of a substantial impact on the jury's verdict than did defense counsel's own admission with respect to his client's drug use. Accordingly, the judge's error, if any, in admitting the challenged statement was harmless, and so reversal is not merited on that basis.[4] See Arbolaez, 450 F.3d at 1291.

B. Admission of Firearms Evidence Found During Search of Burris's House

---

[4] To the extent that Burris argued in the district court that the police officer's statements violated the Confrontation Clause of the Constitution, he waived this claim by not formally arguing it on appeal. See Gupta, 463 F.3d at 1195. Therefore, we do not address this claim.

13

Burris argues that the district judge erred in admitting evidence at trial that firearms were discovered during the search of his house, because it was as likely that he "possessed the weapons for reasons unrelated to an intent to distribute drugs as it is that he used them to further drug distribution." Appellants' Br. at 24. He asserts that the government failed to establish "a nexus between the gun and the drug trafficking operation," id. at 23, and, thus, this evidence was "impermissibly prejudicial," id. at 24.

We review a properly preserved claim of evidentiary error for abuse of discretion. United States v. Lankford, 955 F.2d 1545, 1548 (11th Cir. 1992). We have identified the presence of weapons with the conclusion that a defendant is dealing or manufacturing drugs. United States v. Ramsdale, 61 F.3d 825, 830 (11th Cir. 1995). Moreover, we have explained that "[i]t is uniformly recognized that weapons are often as much 'tools of the trade' as the most commonly recognized narcotics paraphernalia." Id. (citation omitted) (alteration added). Under Ramsdale, we conclude that the district judge did not abuse his discretion in allowing the government to introduce evidence that weapons were seized from Burris's house as part of its case in chief to prove the charge of possession with intent to distribute methamphetamine.

C. Limitation of Cross-Examination of Government Witness by Defense Counsel

14

Burris argues that the district judge abused his discretion in sua sponte foreclosing his cross-examination of Cher Ward, whose testimony "became the lynchpin of the Government's case." Appellant's Br. at 20. Burris asserts that it was "essential" for Ward's "bias to be revealed to the jury to determine how to consider her testimony," id. at 21, and that her bias "could only be revealed in the method [Burris] used in the beginning of his cross-examination—to set forth the charges and sentence to which Ward was exposed before she made the decision to enter a guilty plea and to contrast that with the benefit of the bargain she received once she agreed to testify for the Government against Appellant Tim Burris," id. at 21-22. Burris cites three cases, Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480 (1988) (per curiam), United States v. Baptista-Rodriguez, 17 F.3d 1354 (11th Cir. 1994), and Lankford, 955 F.2d 1545, where courts have concluded that a district judge violated the Sixth Amendment to the Constitution by limiting cross-examination of a particular witness.

A district judge's discretion in limiting the scope of cross-examination is subject to the requirements of the Sixth Amendment. Lankford, 955 F.2d at 1548. The right of cross-examination is embodied in the constitutional right of confrontation guaranteed by the Sixth Amendment. Id.

> Cross-examination has traditionally been allowed for the purpose of impeaching or discrediting the witness. In particular, the exposure of a

15

witness' motivation in testifying has been labelled by the Supreme Court as an important function of the Sixth Amendment right to cross-examination. "This court has long recognized the particular importance of searching cross-examination of witnesses who have substantial incentive to cooperate with the prosecution." The importance of such cross-examination does not depend upon whether or not some deal in fact exists between the witness and the government. What counts is whether the witness may be shading his testimony in an effort to please the prosecution. "A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception." And further, where the witness sought to be cross-examined is the government's "star" witness, "'providing an essential link in the prosecution's case, the importance of full cross-examination to disclose possible bias is necessarily increased.'"

Id. (citations omitted).

If a district judge improperly limits the cross-examination of a witness, under the Sixth Amendment, reversal of a conviction is not automatically required. To the contrary, reversal is required only if the error was not "'harmless beyond a reasonable doubt.'" Id. at 1552 (citation omitted). "In making this determination, a 'host of factors' are to be considered, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id. (citation omitted). "The test for the Confrontation Clause is whether a reasonable jury

16

would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." United States v. Garcia, 13 F.3d 1464, 1469 (11th Cir. 1994).

From an evidentiary standpoint, a trial court has "broad discretion under Federal Rule of Evidence 611(b) to determine the permissible scope of cross-examination." Lankford, 955 F.2d at 1548. "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Fed.R.Evid. 611(b). An evidentiary error will require reversal only if it had a prejudicial effect on the defendant. United States v. Reed, 700 F.2d 638, 646 (11th Cir. 1983). This requires "'an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.'" Id. (citation omitted). The defense had the constitutional right to question the cooperating government witness over the plea bargain and any "'substantial incentive'" that she may have received in exchange for testifying at Burris's trial. See Lankford, 955 F.2d at 1548 (citation omitted). Because the plea bargain was initially discussed on direct examination, it was within the scope of permissible cross-examination under the Federal Rules of Evidence. See

Fed.R.Evid. 611(b).

Nevertheless, we conclude that the error, if any, was harmless. While the witness's testimony undoubtedly was an important part of the government's prosecution of Burris, since she provided direct testimony that Burris distributed drugs to her on a daily basis, there was overwhelming additional evidence supporting Burris's guilt. Moreover, Burris did not argue in the district court and does not argue on appeal that he intended to introduce evidence to contradict the witness's testimony on any material point. Rather, Burris asserts that he wanted to reveal the witness's bias in favor of the government because of the plea agreement, a revelation that already had been made during direct examination. Therefore, this issue on appeal fails.

### III. CONCLUSION

Burris has appealed his conviction for possession with intent to distribute methamphetamine based on various trial rulings. As we have explained, none of these challenges on appeal merits reversal of his conviction. Accordingly, Burris's conviction is **AFFIRMED**.