[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10355

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RYAN RUSTY RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:18-cr-00136-CEM-GJK-1

_____

Before ROSENBAUM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Ryan Rodriguez appeals his convictions for receipt, possession, and distribution of child pornography. He argues that insufficient evidence supported his convictions and that the district court abused its discretion by failing to give the jury his requested instruction on evidence admitted under Rule 404(b), Fed. R. Evid. After careful review, we affirm in part and vacate in part.

## I.

In a five-count superseding indictment, Rodriguez was charged with knowing receipt (Counts 1, 2), possession (Count 3), and distribution of child pornography (Counts 4, 5). *See* 18 U.S.C. §§ 2252A(a)(2), (5)(B). The indictment identified by name the computer file containing child pornography for the receipt and possession offenses, but not for the distribution offense. Rodriguez pled not guilty, and the case proceeded to trial.

### A.

The trial evidence, in summary, established the following. Using a peer-to-peer file-sharing program, Federal Bureau of Investigation agents identified and downloaded suspected child pornography from an IP address registered to Rodriguez's mother at a

residence in Orlando on January 4, 2018, and February 9, 2018.[1] The downloaded files included a set of videos depicting unspeakably brutal sexual violence against a toddler-aged child (the "DD videos"), and a set of videos depicting females approximately eleven to fourteen years old exposing their breasts and vaginal areas and touching themselves in a lewd manner (the "Webcam videos").

Based on the downloaded files, the FBI obtained and executed a search warrant at the residence connected to the IP address. When the agents arrived, Rodriguez attempted to hide a computer drive before opening the door, and when confronted about the missing drive he claimed to have thrown it out because it was broken. The agents found the missing drive, however, and Rodriguez eventually admitted to trying to hide it. In Rodriguez's bedroom, agents found a computer and multiple sticky notes on which someone had written various terms associated with searching for child pornography. The jury also heard evidence that Rodriguez was certified to build computers and likely had built one of the computers found in his home.

Rodriguez spoke with FBI agents while the search was performed. He claimed that he sometimes accidentally downloaded child pornography while searching for adult pornography. But he denied intentionally searching for child pornography and claimed

---

[1] The FBI used a law-enforcement file-sharing program, "Torrential Downpour," which downloaded complete files from a single source, rather than assembling the files from multiple sources.

to immediately delete any child pornography he accidentally downloaded. Rodriguez also acknowledged visiting an internet "forum" containing pornography of both "teens" and children and using versions of the word "pedophile" as his password on the forum.

Digital forensic testing revealed child pornography on three devices seized from Rodriguez's residence: (a) an eight-terabyte hard drive contained the two video files at issue for Count 2 in a shared folder used by a peer-to-peer program; (b) a one-terabyte drive, which Rodriguez had attempted to hide and which contained the operating system for the eight-terabyte drive, contained the partially downloaded video file for Count 1 in another folder for a peer-to-peer program; and (c) a third drive contained the video file for Count 3 as part of a backup file of Rodriguez's cell phone. The forensic expert also found a "link file" for one of the videos in Count 2, which indicated that the file had been accessed, but not for the other video files.

As for the distribution counts (Counts 4 and 5), the forensic expert did not find the two sets of videos downloaded by the FBI in January and February 2018. But he found other evidence of their presence, including a link file indicating that the Webcam videos had been accessed and BitTorrent log files indicating that the video sets were downloaded or made available for download multiple times during or around the time of the FBI downloads.

The forensic expert further testified about peer-to-peer file-sharing programs and Rodriguez's settings. As relevant here, the

expert testified that, when Rodriguez installed BitTorrent on his computer, he agreed to a "legal notice" stating that any data he downloaded "will be made available to others by means of upload. Any content you share is your sole responsibility." Rodriguez also changed the default settings to reduce the maximum upload speed—how fast others could obtain data from him—but did not prevent uploading altogether. The forensic expert explained that doing so allowed the user to maximize use of the internet, since there is only a limited amount of bandwidth on the computer.

In examining the computer, the forensic expert found traces of other files with names either known or likely to contain child pornography which had been accessed, downloaded, or shared. The expert testified that Rodriguez regularly used specialized erasing software on his computer, which can prevent a computer-forensics examination from finding evidence of a deleted file. But the examiner was able to recover over 900 images of child pornography in unallocated space, meaning the files had been deleted but not entirely removed, as well as a software log showing errors related to the attempted erasure of dozens of files with names indicative of child pornography. In addition, the forensic examiner found various other evidence of Rodriguez's interest in child pornography, including (a) bookmarked websites containing child pornography; (b) the repeated use of search terms associated with child pornography—such as "child pornography" or "pthc" ("preteen hardcore")—on peer-to-peer programs and Google; and (c) documents that provided links to child pornography, including

the DD videos, and to advocacy for child pornography and pedophilia.

## B.

Before trial, Rodriguez had moved to bar the admission of evidence not directly related to the charged offenses, including the bookmarked websites, search terms, and sticky notes. In his view, this evidence of other uncharged bad acts was merely propensity evidence that was inadmissible under Fed. R. Evid. 404(b). The government responded that the evidence was not subject to Rule 404 because it was intrinsic to the charged offenses, and that, even if Rule 404 applied, the evidence was admissible to show knowledge and lack of mistake or accident.

The district court agreed with the government that the evidence was intrinsic to and intertwined with the charged offenses, and so was admissible without regard to Rule 404. Accordingly, the court denied Rodriguez's request at trial for a limiting instruction on Rule 404(b) evidence.

## C.

Ultimately, the jury returned a guilty verdict on all five counts, and the district court denied Rodriguez's motion for judgment of acquittal. The district court sentenced him to a total term of 216 months in prison (216 months on each count, to run concurrently), and this appeal followed.

## II.

We review for abuse of discretion a claim that the district court omitted an instruction. *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994). "A trial court abuses its discretion in denying a requested jury instruction when (1) the instruction is substantively correct; (2) it was not substantially covered in the charge actually delivered to the jury; and (3) the failure to give it seriously impaired the defendant's ability to present an effective defense." *United States v. Gonzalez*, 975 F.2d 1514, 1516 (11th Cir. 1992) (quotation marks omitted).

Relevant evidence is generally admissible unless it falls under a rule of exclusion. *See United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013). Rule 404(b) provides that evidence of other bad acts is not admissible to prove a defendant's propensity to commit the charged offense, but it may be admissible if it is relevant to an issue other than the defendant's character, such as intent, knowledge, or lack of mistake or accident. Fed. R. Evid. 404(b). The admission of Rule 404(b) evidence generally requires a jury instruction limiting the use of such evidence to non-propensity purposes. *Gonzalez*, 975 F.2d at 1517; *see United States v. Tokars*, 95 F.3d 1520, 1537 (11th Cir. 1996) (stating that "the district court must provide a limiting instruction" for Rule 404(b) evidence).

But Rule 404(b) does not apply if the evidence is "intrinsic" to the charged offenses. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Evidence is intrinsic if it arose out of the same transaction or series of transactions as the charged offense, is

necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense. *United States v. Ramsdale*, 61 F.3d 825, 829 (11th Cir. 1995); *see also United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013). Evidence is admissible as "inextricably intertwined" with the charged offense "if it is an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Troya*, 733 F.3d at 1131 (quotation marks omitted).

Rodriguez argues that the evidence of his sticky notes, search history, bookmarked websites, documents about child pornography, wipe/erase software, and child pornography recovered from unallocated space is not intrinsic because it does not directly relate to any of the files he was charged with receiving, possessing, or distributing. Rather, in Rodriguez's view, this evidence was offered to show his general interest in child pornography, and so was unfairly prejudicial without an instruction limiting the use of this evidence by the jury to his intent or knowledge.

Here, the district court did not abuse its discretion in concluding that the evidence was inextricably intertwined with the receipt and distribution offenses. The evidence was an integral and natural part of the story of either the search of Rodriguez's home or the forensic search of his devices. *See Troya*, 733 F.3d at 1131. More to the point, much of it related to Rodriguez's use of a computer, the internet, and peer-to-peer programs to search for and download (and ultimately delete) child pornography, which was

how he received or distributed the child pornography in Counts 1, 2, 4, and 5.  It therefore provided important context for the files found (or not found) on Rodriguez's devices, and it rebutted claims Rodriguez made during the FBI interview, including that his interaction with child pornography was merely accidental and that he had never used the search term "pthc."  Because the evidence was intrinsic, Rule 404(b) did not apply, and it was no abuse of discretion to refuse to give Rodriguez's requested limiting instruction as to the receipt and distribution counts.

But not all of that same evidence was intrinsic to Count 3, the possession count.  *See Gonzalez*, 975 F.2d at 1517–18 (explaining that evidence which is intrinsic to one count may be extrinsic to another count).  In contrast to the receipt and distribution counts, there is no evidence that the possession count arose from Rodriguez's use of the internet or peer-to-peer programs to search for and download child pornography.  Rather, the child pornography he possessed was in a backup file for his cell phone, and the forensic expert testified that the file name was consistent with WhatsApp files, indicating the file was sent to him through the messaging application WhatsApp, potentially without his input or knowledge.

In light of these facts, we cannot say the evidence of Rodriguez's interest in and pursuit of child pornography is "inextricably intertwined" with the possession crime in the same way that it was for the receipt and distribution crimes.  *See Troya*, 733 F.3d at 1131; *Ramsdale*, 61 F.3d at 829.  Rather, the evidence was offered as to

Count 3 "only to show [Rodriguez's] guilty knowledge and intent" or lack of mistake. *Gonzalez*, 975 F.2d at 1517 (emphasis omitted).

The trial evidence established that Rodriguez possessed a video file containing child pornography on a computer drive as part of a backup file of his cell phone. But there is no evidence to indicate where the file came from besides WhatsApp, whether Rodriguez accessed the file, whether the backup process was automatic or required some action by Rodriguez, or other circumstances indicating his knowledge of the file. *See United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir. 2011) ("Inadvertent [possession] of child pornography is not a violation of the statute."); *see also United States v. Carroll*, 886 F.3d 1347, 1353–54 (11th Cir. 2018) (refusing to hold a defendant "strictly liable" for distributing child pornography "without some showing that he consciously allowed others to access those files"). Rather, the government says the jury could reasonably infer Rodriguez's knowledge of the file and its contents from his searching for and downloading of child pornography.

To the extent the government's inference is a fair one, however, it sounds indistinguishable from Rule 404(b) reasoning—i.e., Rodriguez's possession of child pornography on this occasion was not by mistake or accident because he knowingly possessed and received child pornography on other occasions. *See, e.g., United States v. Jernigan*, 341 F.3d 1273, 1280–81 (11th Cir. 2003) (holding that a prior conviction for knowing possession of a firearm is admissible as Rule 404(b) evidence of knowing possession of a firearm to prove knowledge and lack of mistake). Accordingly, the court

erred by treating the evidence as outside the scope of Rule 404(b) and refusing to give a limiting instruction on that basis. *See id.* (stating that Rule 404(b) evidence was properly admissible "only if a limiting instruction was given to the jury to prevent prejudice to the defendant"); *Tokars*, 95 F.3d at 1537.

We also conclude that the lack of a limiting instruction as to Count 3 seriously impaired Rodriguez's defense.[2] *See Gonzalez*, 975 F.2d at 1516. Given the thin line between the proper use of Rule 404(b) evidence and impermissible propensity purposes, as well as the absence of other evidence indicating Rodriguez's knowledge of the child pornography in the backup file, a limiting instruction was necessary to prevent prejudice to the defense. *See Gonzalez*, 975 F.2d at 1517 ("The absence of a limiting instruction opened the door for the jury to consider this evidence in an improper light."); *see also United States v. Sterling*, 738 F.3d 228, 238 (11th Cir. 2013) (noting that "[e]xtrinsic evidence of other crimes, wrongs, or acts is inherently prejudicial to the defendant" and may

---

[2] For the first time on appeal, the government asserts in the alternative that the evidence was admissible as propensity evidence under Rule 414, Fed. R. Evid. But even assuming the government is correct that some of the evidence was admissible under Rule 414, we cannot sustain the verdict on that ground. Neither Rodriguez nor the district court had the opportunity to address admissibility under Rule 414, and there are colorable grounds for concluding both that at least some of the evidence would not qualify as a child-molestation crime under that rule and that a limiting instruction might still be appropriate. *See, e.g. United States v. Perrault*, 995 F.3d 748, 770 (10th Cir. 2021) ("[W]e have recognized that district courts can mitigate any potential jury bias from Rule 414 witnesses by giving limiting instructions.").

entice the jury to draw impermissible propensity inferences (quotation marks omitted)).

In sum, we conclude that the evidence challenged by Rodriguez was intrinsic to the receipt and distribution counts, and therefore properly admitted without a limiting instruction on Rule 404(b) evidence. But at least some of that evidence was extrinsic to the possession count, and so a limiting instruction was warranted. *See Gonzalez*, 975 F.2d at 1517–18. Because the error was not harmless, we vacate Rodriguez's conviction on Count 3 and remand for further proceedings consistent with this opinion.

## III.

Next, we consider the sufficiency of the evidence as to receipt and distribution counts. We review *de novo* whether sufficient evidence supports a guilty verdict, "viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). The evidence, whether direct or circumstantial, is sufficient if "a reasonable jury could have found the defendant guilty beyond a reasonable doubt," *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008), even if it does not exclude every reasonable hypothesis of innocence, *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005). The jury is "free to choose among reasonable constructions of the evidence," *id.*, and we "must accept a jury's inferences and determinations of witness credibility," *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004).

It is unlawful to "knowingly receive[] or distribute[]"any child pornography that has traveled in interstate commerce, "including by computer." *See* 18 U.S.C. § 2252A(a)(2). The term "knowingly" means that the act was performed voluntarily and intentionally, and not because of a mistake or accident. *United States v. Woodruff*, 296 F.3d 1041, 1047 (11th Cir. 2002). Thus, inadvertent receipt or distribution of child pornography "is not a violation of the statute." *Pruitt*, 638 F.3d at 766. Rodriguez contends that the government's evidence failed to show that he *knowingly* received or distributed the specific files at issue for each count, as opposed to child pornography more generally.

## A. Receipt

"A person 'knowingly receives' child pornography under 18 U.S.C. § 2252A(a)(2) when he intentionally views, acquires, or accepts child pornography on a computer from an outside source." *Pruitt*, 638 F.3d at 766. "Evidence that a person has sought out—searched for—child pornography on the internet and has a computer containing child-pornography images—whether in the hard drive, cache, or unallocated spaces—can count as circumstantial evidence that a person has 'knowingly receive[d]' child pornography." *Id.*

Here, viewing the evidence and drawing all reasonable inferences in favor of the jury's verdict, sufficient evidence supports Rodriguez's convictions for knowingly receiving child pornography. The video files for these counts were found in folders used by peer-to-peer programs, which, according to the forensic expert,

meant that they were selected for download by Rodriguez from an outside source.

Moreover, the jury had ample reason to discount Rodriguez's claim in the FBI interview that, in receiving these and other files, he did not know they contained child pornography. Rodriguez hid the drive on which the Count 1 video was located and then lied about it. And despite his denials to the FBI, the evidence showed that he regularly searched for child pornography on the internet and had around 900 images of child pornography in unallocated space on his computer. *See Pruitt*, 638 F.3d at 766. Rodriguez also had accessed one of the video files for Count 2. While the forensic expert was not able to discern whether Rodriguez accessed or viewed the other video files, there was sufficient circumstantial evidence to prove that he received these files through a peer-to-peer program knowing they contained child pornography. *See id.*; *see also Carroll*, 886 F.3d at 1353 (finding knowing possession where "hundreds of images and videos of child pornography were manually downloaded" to the defendant's computer through a peer-to-peer program). We affirm Rodriguez's convictions for receipt of child pornography.

## B. Distribution

We also affirm Rodriguez's distribution convictions. We have held that knowingly placing or leaving files in a shared folder connected to a peer-to-peer network "undoubtedly constitutes distribution." *Carroll*, 886 F.3d at 1353. But the mere use of a peer-to-peer program is not enough on its own. *Id.* at 1354. Rather,

there must be "some proof that the defendant consciously shared files, either by authorizing their distribution or knowingly making them available to others." *Id.* In *Carroll*, for example, we explained that such proof could include evidence that the peer-to-peer program "forces the user to acknowledge and accede to a licensing agreement explaining the peer-to-peer process and then involves the user in setting up a shared folder." *Id.*

Here, the evidence was sufficient for a reasonable jury to conclude that Rodriguez distributed child pornography as charged in Counts 4 and 5. The evidence shows that Rodriguez knowingly made available the sets of videos that were downloaded by the FBI on January 4, 2018, and February 9, 2018. When he installed the peer-to-peer program BitTorrent, through which the files were uploaded, Rodriguez agreed and acknowledged that when he ran a torrent, the data would be available to others for upload and that he was responsible for any content that he shared. *See Carroll*, 886 F.3d at 1354. He also modified the settings to reduce upload speeds but did not prevent uploading altogether, further indicating his awareness that his data was being uploaded. And he held a computer certification and otherwise appeared to be familiar with the operation of peer-to-peer programs and computers.

Moreover, the forensic expert testified that BitTorrent log files showed that the DD videos and Webcam videos were downloaded by Rodriguez or made available for others to download multiple times during or around the time the FBI downloaded the videos, and that a "link file" was created in relation to the Webcam

videos, which meant they had been accessed by a user. Combined with evidence that Rodriguez regularly searched for child pornography using peer-to-peer programs, and possessed child pornography on his computer, the jury could reasonably conclude that Rodriguez knowingly downloaded child pornography to a shared folder accessible to others on the peer-to-peer network. *See Carroll*, 886 F.3d at 1353–54. That is enough to constitute distribution under § 2252A(a)(2).

Rodriguez's claim that the FBI used a special peer-to-peer program misses the mark. The evidence shows that the key difference between the FBI's peer-to-peer program and ordinary peer-to-peer programs was that the FBI's program downloaded a complete file from a single source, rather than assembling the file from multiple sources. But nothing suggests that the FBI had greater access to files on Rodriguez's computer than ordinary users, or that the files were not in fact accessible by others, even without evidence that anyone besides the FBI accessed them. Finally, that the videos were deleted from Rodriguez's computer does not mean he cannot be liable for distributing them before deletion. *See Carroll*, 886 F.3d at 1353 (finding sufficient evidence to convict defendant of possessing child pornography that had been deleted). In fact, such deletion was consistent with evidence that he used specialized programs to regularly delete child pornography on his computer. *See id.* (declining to "create a perverse safe harbor" for deleted files). Accordingly, we affirm Rodriguez's distribution convictions.

## IV.

In sum, we affirm Rodriguez's convictions for receipt and distribution of child pornography (Counts 1, 2, 4, and 5). We vacate his conviction for possession of child pornography (Count 3), and we remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**